**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**JASON MAYO**  **PLAINTIFF**

**v.**  **CIVIL ACTION NO. 3:21CV-P424-JHM**

**KENTUCKY DEPARTMENT OF**
**CORRECTIONS** *et al.*  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendant Katherine Williams, the last remaining Defendant in the action (DN 37). Proceeding *pro se*, Plaintiff Jason Mayo filed a response to the motion (DN 47), and Defendant Williams filed a reply (DN 58). For the reasons that follow, the motion for summary judgment will be granted.

**I.**

In Plaintiff's verified original complaint (DN 1), he stated that on April 21, 2020, he was involved in a fight with another inmate while housed at Roederer Correctional Complex (RCC), which caused an injury to his left hand and middle finger. (DN 1, PageID.5). He reported that he was transferred that same day to Luther Luckett Correctional Complex (LLCC) "to be placed in its 'Restrictive Housing Unit' 1 i.e. segregation as a disciplinary sanction for the physical violation at RCC." (*Id.*). He asserted claims against the Kentucky Department of Corrections (KDOC), Wellpath Medical Services, Inc. (Wellpath), and various personnel of KDOC and Wellpath alleging that he was denied proper medical treatment for the injuries to his hand and finger. The named Defendants included Katherine Williams, a nurse practitioner at LLCC.

The Court conducted an initial review of the original complaint pursuant to 28 U.S.C. § 1915A and dismissed the claims as stated in the complaint. (DN 8). The Court allowed Plaintiff to file an amended complaint to sue Katherine Smith, who was not named as a Defendant in the

original complaint but against whom allegations were made, and any other individual who did not permit Plaintiff to clean his finger after having hand surgery and to state specific allegations as to each person's involvement. (*Id.*, PageID.157). The Court also allowed Plaintiff to file an amended complaint to name Smith as a Defendant and any other individuals who denied him medical treatment for his finger from June 2020 to September 2020 and who denied him physical and occupational therapy after his second surgery and to state specific allegations as to each person's involvement. (*Id.*, PageID.157).

The Court allowed Plaintiff to file an amended complaint based on his allegations in the original complaint that follow. Plaintiff stated that after his transfer to LLCC on April 21, 2020, he had x-rays performed on April 23, 2020, and that he was "placed back in (RHU) in extreme pain." (DN 1, PageID.5). Plaintiff stated that on April 30, 2020, he was transported to Jewish Hospital "to have surgery performed [by] Doctor Tuna Ozyurekoglu M.D." (*Id.*, PageID.6). He continued, "After surgery that day, I was released with specific instructions not to do anything, and I was taken back to segregation, where I was not allowed to shower but every other day, and I was denied my hand being cleansed after surgery while at (LLCC) segregation unit." (*Id.*, PageID.6-7). He asserted, "My Eighth Amendment Rights were violated by . . . the medical staff at the (LLCC) by not providing proper medical treatment in cleaning my wound on my left hand from surgery, and further housing me in an unsanitized (RHU) cell." (*Id.*, PageID.7)

Plaintiff reported that on May 6, 2020, he was released from segregation at LLCC and sent back to RCC. (*Id.*). Plaintiff stated that on May 6, 2020, his finger "had become infected while being housed in [LLCC's] segregation unit prior to my return to (RCC) on May 5, 2020, due to my hand never being cleansed by medical staff there." (*Id.*, PageID.8). He stated, "My Eighth Amendment rights were violated by Katherine Smith . . . by not following doctors post operation

orders addressed in my medical file." (*Id*.). He stated that on May 12, 2020, Dr. Ozyurekoglu made a report stating that his left middle finger "had infection in it" and that he was to have a follow up appointment in six weeks. (*Id*., PageID.7-8). Plaintiff reported that Dr. Ozyurekoglu ordered an antibiotic for his finger and ordered "(LLCC) medical staff to start gentle passive rehab and active extended exercise . . . ." (*Id*., PageID.8).

Plaintiff further asserted in the original complaint that on June 23, 2020, he was seen by Dr. Ozyurekoglu for another six-week follow up. (*Id*.). According to Plaintiff, he explained to Dr. Ozyurekoglu that he "had been having to do the 'physical therapy' on my own, due to medical staff not following his recommendations from May 12, 2020, and that the swelling had not gone away which created tingling in my left hand with numbness." (*Id*.). He alleged, "From June of 2020, thru September 2020 when I returned back to (RCC), I had received 'NO' treatment on my left hand, middle finger, while Katherine Smith, Nurse Practitioner, at (LLCC) was aware of my condition in regards to my left hand." (*Id*., PageID.8-9). He stated that his Eighth Amendment rights were violated by Smith "by not remedying the situation with my swollen left hand & middle finger." (*Id*., PageID.9).

Plaintiff further maintained that on November 18, 2020, he filed a medical grievance form. He stated that in the grievance he "advised the medical Dep't that my left middle finger was not set from the surgery on April 30, 2020, and that in my last follow-up with Doctor [Ozyurekoglu] on June 23, 2020, x-rays revealed that I had bone spurs, and Ostoearthritus in my left middle finger." (*Id.*). He further asserted, "Also, during my follow-up with Doctor [Ozyurekoglu], I explained to him that I had continuous pain and possible nerve damage in my left hand, middle finger, and that I needed help." (*Id*.).

3

After the Court gave Plaintiff the opportunity to file an amended complaint, as discussed above, Plaintiff did so, naming as Defendants Katherine Williams and Katherine Smith, identifying them as nurse practitioners at LLCC.[1] The Court conducted an initial review of the amended complaint and allowed Plaintiff's claims for deliberate indifference to serious medical needs and negligence to proceed against Defendants Katherine Williams and Katherine Smith in their individual capacities. (DN 15). In her answer, Defendant Williams clarified that her name was formerly Katherine Smith and that Defendants Williams and Smith are in fact the same person (DN 29), which Plaintiff did not dispute. Therefore, the Court directed the Clerk of Court to terminate Defendant Smith as a party to this action. (DN 40).

In the verified amended complaint (DN 13), Plaintiff stated that on April 30, 2020, his rights were violated by Defendant Williams "by not following orders from Dr. Tuna Ozyurekoglu's post operation orders addressed in medical file." (*Id.*, PageID.173). He maintained that Defendant Williams "failed to provide proper medical treatment in cleaning my finger after surgery and further while housing me in an un-sanitized cell in the 'Restricted Housing Unit,' (Segregation), Where my hand became infected." (*Id.*). Plaintiff continued as follows:

> On 5-5-2020, I left and returned to RCC, Upon Arrival, I advised medical staff that my left hand/finger was swollen and infected, and that I was housed at LLCC in the "RHU" building and that defendant Williams . . . [was] the Main Nurse[] that treated there. Ms. Williams . . . neither cleaned re-bandaged, or sought preventative health risk of me contracting infection while being placed in a cell that is not sufficient for housing inmates coming out of surgery, violating my Eighth & Fourteenth Amendments to the U.S. Constitution by not following the post-operation orders from Dr. Tuna in my medical file. On May 12, 2020, Dr. Tuna Ozyurekoglu made a report, Plaintiff Mr. Mayo's hand-finger was infected, and he ordered antibiotic for my finger and ordered LLCC, & RCC . . . nurse practitioner's and medical staff "to start gentle passive rehab and active extensive exercise." From June, 2020-September 2020, I the plaintiff received no treatment or Rehab for my left middle finger, while [Defendant] Williams was aware of my condition

---

[1] He also sued Shelly Botaw and Angela Clifford, medical providers at NTC. The Court severed Plaintiff's claims against those Defendants and transferred the claims to the Eastern District of Kentucky where there was proper venue. (DN 14).

> in regards to my hand and finger. [Defendant] Williams failed to help! I was denied a transfer to the proper facility for physical therapy treatment, and they were negligent in following Dr. Tuna's orders as laid out in my medical file. [Defendant] Williams did nothing to remedy the situation concerning my swollen hand and infected finger at all, Being indifferent to serious medical need. An X-ray on 6-23-2020 showed I had broken bone spurs in my left middle finger, Osteoarthritis, and Possible nerve damage, Which has now led to (2) other surgeries.

(*Id.*, PageID.173-174). Plaintiff reported that the two other surgeries occurred on March 11, 2021, and December 9, 2021.[2] (*Id.*, PageID.174). He stated that Defendant Williams "knew my hand/finger needed serious medical attention, and being medical professionals, knew of the risk and dangers posed to me if not reasonable sought after." (*Id.*). He further asserted that Defendant Williams "was personally involved in the incident that plaintiff complains of, and Ms. Williams told me that she was my provider during the dates . . . concerning this incident." (*Id.*).

## II.

### A.

In her motion for summary judgment, Defendant Williams argues that Plaintiff has not established a claim for deliberate indifference to serious medical needs against her because he has produced no verified medical evidence to establish any harm purportedly caused by her and that Plaintiff received extensive treatment for his finger.[3] (DN 37, PageID.282). She provides the following summary of Plaintiff's medical records:

> 1. Plaintiff was seen by medical on April 21, 2020, after a fight with another inmate, complaining of pain in his finger. [DN 1-6, p. 106-107].
>
> 2. Katherine Williams/Smith saw Plaintiff on April 23, 2020, noting a finger fracture[.] [DN 1-6, p. 104].

---

[2] The medical records show that Plaintiff was housed at NTC at the time he underwent the two additional surgeries. However, it is unclear from the record what date he was transferred to NTC.

[3] Defendant Williams also argues that she is entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies before filing suit. Because the Court will grant the motion on the merits, it will not address the exhaustion issue.

5

3. On April 24, 2020, Katherine Smith made an urgent referral of Plaintiff for surgery, noting that an x ray confirmed a broken finger after an altercation with another inmate. [DN 1-5, p. 53].

4. Katherine Williams/Smith saw Plaintiff for a pre surgery appointment on April 24, 2020. [DN 1-6, p. 102].

. . .

5. On April 30, 2020, Plaintiff had surgery on his finger to repair the finger fracture. [DN 1-5, p. 55].

6. On May 5, 2020, Teresa Torian LPN saw Plaintiff. He was given a cover for his finger while in the shower and instructed to keep hand elevated and in a sling. [DN 1-6, p. 101].

7. On May 7, 2020, Daniel Long, FNP saw Plaintiff for a post-surgery wound check[.] [DN 1-6, p. 100].

8. A follow up exam on May 12, 2020, notes that the fracture is healing but superficial infection. Follow up is to occur in six weeks. Dressings must remain on the finger. Gentle passive flexion and active exercises should be started. Bactim every 12 hours is to be applied. [DN 1-5, p. 64].

9. On May 13, 2020, Daniel Long, FNP saw Plaintiff for a post-surgery visit, "Pt reports doing ok with no new symptoms." [DN 1-6, p. 97-98].

10. On May 15, 2020, Carrie Smith, RN cleansed Plaintiff's finger, applied antibiotic ointment, and the wound was covered with a dressing. [DN 1-6, p. 95].

11. On May 18, 2020, Plaintiff's finger was cleansed, antibiotic ointment was applied, and the wound was covered with a dressing. [DN 1-6, p. 94].

12. On May 19, 2020, Plaintiff's finger was cleansed, antibiotic ointment was applied, and the wound was covered with a dressing. [DN 1-6, p. 93].

13. On May 20, 2020, Teresa Torian LPN cleansed Plaintiff's finger, applied antibiotic ointment, and covered with a dressing. [DN 1-6, p. 92].

14. On May 22, 2020, Plaintiff's finger was cleansed and covered with a dressing. [DN 1-6, p. 91].

15. On May 26, 2020, Brandi Grigsby RN cleansed Plaintiff's wound and noted that the wound was healing. [DN 1-6, P. 89].

16. On May 27, 2020, Cori Goodknight RN noted that Plaintiff's dressing was changed. Plaintiff was instructed to notify medical if the wound on his finger opened back up. [DN 1-6, p. 88-89].

17. On May 30, 2020 Carrie Smith RN cleansed Plaintiff's finger. The note states, "Area is closed so no drsg needed." [DN 1-6, p. 87].

18. On May 31, 2020, Donna Newsome RN noted that Plaintiff was in medical for a bandage. His finger was cleansed and a knuckle bandage was applied. The patient reapplied his splint. [DN 1-6, p. 86-87].

19. On June 2, 2020, William Grenier, APRN saw Plaintiff for a follow-up appointment. The "assessment" states, "Finger looks good, mild [s]welling present . . . no redness, limited [range of motion] due to swelling, stiches in place. . . Pt reports doing okay with no new symptoms . . . . Wound now healed. Pt continues with finger splint. Awaiting f/u appointment with Kleinert & Kutz. [DN1-6, p. 83].

20. A June 1, 2020[,] note states that Brandi Grigsby RN cleansed Plaintiff's finger. Plaintiff was educated on icing and proper use. The note states that Plaintiff is taking Meloxican once daily. [DN1-6, p. 85].

21. Plaintiff was seen by Kleinert Kutz and Associates for a two-month surgery follow up appointment on June 23, 2020. Notes indicate that Plaintiff was doing PT on his own. He stated that swelling had gone down since the last visit. He stated he noticed numbness and tingling on his left hand especially in the morning. [DN1-6, p. 83].

(*Id.*, PageID.283-84).

Defendant Williams asserts that the medical records show that April 24, 2022 was the last date she was involved with Plaintiff's medical care and treatment. (*Id.*, PageID.283). She argues, "Plaintiff had at least 21 encounters with health care providers between April 21 and June 23, 2020[]" and that he saw Defendant Williams during two visits, on April 23 and April 24, 2020. (*Id.*, PageID.283-84). In regard to Plaintiff's claims concerning lack of treatment between June and September 2020, Defendant Williams argues, "Medical records show that the finger wound had healed; no further treatment was necessary, and Plaintiff did not request to be seen by [Defendant Williams] or any other medical provider between June and September, 2020." (*Id.*).

Defendant Williams further argues that Plaintiff "has produced no medical evidence to support his conclusory contention that any action or inaction by [Defendant Williams] resulted in any identifiable serious harm to his physical condition." (*Id.*, PageID.286). She argues that Plaintiff "does not have an expert opinion (or treating physician's opinion) that he received inadequate medical care or that his claimed complications are related to delay in receipt of treatment." (*Id.*, PageID.287). She maintains, "Other than his own conclusory allegation[s], which are insufficient to meet his burden of proof, there simply is no proof that Plaintiff suffered any detrimental effect from inaction by [Defendant Williams]." (*Id.*).

Defendant Williams also states that Plaintiff's claims amount to a disagreement with the medical treatment he received which does not give rise to a constitutional claim and that "Plaintiff received extensive treatment for his injury including x-rays, surgery and follow up appointments by an outside orthopedist, and extensive follow up care and treatment by prison medical providers. He received this treatment despite lockdowns caused by the COVID crisis." (*Id.*, PageID.288).

**B.**

Plaintiff filed a response (DN 47) to the motion for summary judgment. In regards to Defendant Williams's arguments based on the merits, Plaintiff states that he has provided "every piece of evidence he has been allowed to have. Grievances and Medical reports." (*Id.*, PageID.417). He maintains that his finger "got infected due to lack of treatment. This is why he was given antibiotics." (*Id.*). He asserts, "The Wellpath Medical Provider is covering for there own from the start. They denied [Plaintiff] medical treatment, the plaintiff even says it in his grievances while a (N.T.C.). There was consistent neglect by Wellpath and there staff including [Defendant Williams]." (*Id.*). Plaintiff continues, "Time and again [Plaintiff] filed grievances about Wellpath not following Doctors order. The response was there was a delay or you have a

8

referral to be seen by the surgeon for follow up." (*Id.*). He states that he filed a grievance in June of 2022 about not getting treatment. (*Id.*). He asserts, "This problem started with [Defendant Williams] and was on going to another prison." (*Id.*). Plaintiff further states, "The evidence that the plaintiff had to have more than one surgery Wellpath has that portion of evidence and has not given it up however the plaintiff filed the grievance dealing with the lack of treatment such as on 6-30-22 while at N.T.C." (*Id.*). He asserts, "Doctors orders have not been followed with (PT) – look in Medical file I have the paper work – if the orders would have been followed – I would not be in pain still and would not have to have a Fourth surgery to fix it." (*Id.*).

Plaintiff attaches an affidavit to his response in which he avers that after his surgery he "was placed into a cell in RHU that was uncleaned and unsanitized." (DN 47-1, PageID.422). He states, "While at L.L.C.C. I was seen by [Defendant Williams] and while I was there she rufused to clean my finger and wrap it. . . . I let R.C.C. staff know this when I went back to R.C.C. . . . As a result of her refusing to clean my finger it got infected." (*Id.*). He further avers, "On 5-5-2020 I started to get treatment for my now infected finger. . . . Antibiotics were given to me for the infection that was caused do to my finger not getting the right treatment by [Defendant Williams]." (*Id.*).

## C.

In her reply (DN 48), Defendant Williams agues that Plaintiff has no expert witness or other verified evidence by a treating medical provider supporting his allegation that Defendant Williams's actions caused his harm. (DN 48, PageID.427). She also reiterates that Plaintiff received "*extensive* care and treatment for his finger" and that a disagreement with treatment is insufficient to establish deliberate indifference. (*Id.*, PageID.428).

9

### III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted).

## IV.

To establish an § 1983 claim premised on inadequate medical care in violation of the Eighth Amendment, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 837-47). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Terrance*, 286 F.3d at 843 (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). "Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Moreover, the standard applied in reviewing the actions of prison doctors and medical staff in this type of case is deferential. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are "generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A court typically will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996). Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate indifference claim. *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996).

In the initial review of the original complaint, the Court allowed Plaintiff to file an amended complaint to sue Defendant Smith, whose name had apparently changed to Defendant Williams, and any other individual who did not permit Plaintiff to clean his finger after having hand surgery and who denied him treatment for his finger from June 2020 to September 2020.[4] After Plaintiff filed his amended complaint, the Court allowed his claims to proceed for deliberate indifference in violation of the Eighth Amendment and for negligence based upon these allegations.

The Court first addresses the claim against Defendant Williams based on the alleged failure to clean Plaintiff's finger after his hand surgery on April 30, 2020, until his return to RCC on May 5, 2020. Plaintiff alleges in the verified amended complaint that Defendant Williams "failed

---

[4] The Court also allowed Plaintiff to amend his complaint to add claims concerning his allegations that he was denied physical and occupational therapy after his second surgery. Plaintiff clarified in the amended complaint that the second surgery occurred on March 11, 2021, after he had been transferred to NTC. (DN 13, PageID.174). As stated above, those claims were severed from the instant action and transferred to the Eastern District of Kentucky.

to provide proper medical treatment in cleaning my finger after surgery and further while housing me in an un-sanitized cell in the 'Restricted Housing Unit,' (Segregation), Where my hand became infected." (DN 13, PageID.173).

The medical records show that Defendant Williams examined Plaintiff's finger on April 23, 2020, diagnosed a fracture, prescribed Tylenol, and noted "Will refer to ortho K&K." (DN 1-3, PageID.104). On April 24, 2020, Defendant Williams documented that she made a request for "urgent K&K hand surgery 4/24 at 9am" and noted that an x-ray was performed confirming "modestly displaced fracture involving the anterior of the third proximal phalanx with intra-articular extension." (*Id.*, PageID.53). That same day, Defendant Williams charted, "Had telemed visit with K&K" and indicated that surgery was scheduled for April 30, 2020." (DN 1-6, PageID.102). The medical records further show that Plaintiff had surgery performed on his finger by Dr. Ozyurekoglu of Kleinert Kutz and Associates Hand Specialists on April 30, 2020. (DN 1-5, PageID.62-63).

To meet the subjective component of a deliberate indifference claim, Plaintiff must show that Defendant Williams possessed a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn*, 22 F.3d at 660. The medical records give no indication that Defendant Williams had any involvement in Plaintiff's treatment after the April 24, 2020, encounter. Plaintiff offers no evidence that he requested Defendant Williams to clean his finger after the surgery and that she refused, that Defendant Williams even had subjective knowledge that Plaintiff's finger was not being cleaned, or that she was responsible for housing him in the restricted housing unit.[5] Plaintiff's conclusory statement

---

[5] Plaintiff was given ample opportunity to engage in discovery. The Court extended the discovery deadline upon Plaintiff's motion (DN 40), gave Plaintiff guidance in conducting discovery (DNs 24 and 40), and provided Plaintiff with a *Pro Se* Prisoner Handbook which includes the Federal Rules of Civil Procedure regarding discovery (DNs 15 and 25).

that Defendant Williams was responsible for his finger not being cleaned, without any evidence to support it, is not sufficient to defeat summary judgment. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). "Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage . . . , so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990)); *see also Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.") (citation omitted); *Perry v. Agric. Dep't*, No. 6:14-168-DCR, 2016 U.S. Dist. LEXIS 25375, at *34 (E.D. Ky. Feb. 29, 2016) ("[C]onclusory allegations are not evidence and are not adequate to oppose a motion for summary judgment.").

Moreover, to the extent Plaintiff believes that Defendant Williams should be held responsible based on her role as a nurse practitioner who supervised other personnel, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). "At a minimum, a

§ 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Therefore, Plaintiff cannot establish deliberate indifference based on Defendant Williams's role as a supervisor of other personnel.

Because Plaintiff fails to put forth evidence that Defendant Williams met the subjective component of a deliberate indifference claim with regard to his claim concerning the alleged failure to clean his finger after the April 30, 2020, surgery until he was transferred to RCC on May 5, 2020, Plaintiff has failed to establish a genuine issue of material fact, and Defendant Williams is entitled to summary judgment with respect to this claim.

In regard to the second claim the Court allowed to proceed—that he was denied treatment for his finger from June 2020 to September 2020, Plaintiff again provides no medical records to show that Defendant Williams had any awareness of the alleged ongoing problems that Plaintiff was having with his finger. Defendant Williams is a nurse practitioner at LLCC, and Plaintiff was housed at RCC during this time. Plaintiff presents no argument or evidence as to how Defendant Williams could have provided treatment to Plaintiff at RCC, even if she were aware of the problems. The Court notes that Plaintiff makes no allegation that Defendant Williams was involved in his alleged lack of treatment for his finger from June 2020 to September 2020 in the affidavit he attached to his response to the summary-judgment motion.

Plaintiff argues in his response that his problems with his finger "started with [Defendant Williams] and was on going to another prison" (DN 47, PageID.417), and he seems to argue that

15

Defendant Williams should be liable for his still ongoing issues with his finger while housed at another prison. However, Plaintiff must bring those claims against the individual medical providers who he alleges denied him treatment. He has produced no evidence that Defendant Williams's failure to clean Plaintiff's finger between April 30 to May 5, 2020, caused his ongoing problems. Therefore, Plaintiff fails to satisfy the subjective component of a deliberate indifference claim with respect to this claim, as well.

For these reasons, Plaintiff has failed to show a genuine issue of material fact, and Defendant Williams is entitled to summary judgment on his Eighth Amendment claim for deliberate indifference to his serious medical needs.

Finally, having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over his state-law negligence claim. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim" in situations when "the district court has dismissed all claims over which it has original jurisdiction."); *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2012). Accordingly, the Court will dismiss Plaintiff's state-law claim without prejudice.

## V. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the motion for summary judgment (DN 37) is **GRANTED**.

The Court will enter a separate Judgment dismissing this action for the reasons stated herein.

Date: August 1, 2023

*Joseph H. McKinley*
Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
      Counsel of record
4414.010